**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, et al. | * | |
| Plaintiffs, | * | |
| v. | * | Civil No.: BPG-19-3492 |
| I. LOSCH INC., et al. | * | |
| Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4. (ECF No. 18). Currently pending are plaintiffs' Motion for Summary Judgment ("plaintiffs' Motion") (ECF No. 68), defendants' Amended Motion for Summary Judgment ("defendants' Amended Motion") (ECF No. 72), plaintiffs' Memorandum of Law in Response to Defendants' Amended Motion for Summary Judgment and Reply in Further Support of Plaintiffs' Motion for Summary Judgment (ECF No. 73), defendants' Memorandum of Law in Response to Plaintiffs' Opposition to Defendants' Amended Motion for Summary Judgment and in Further Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 76), plaintiffs' Supplemental Brief in Support of Their Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment (ECF No. 82), and defendants' Supplemental Memorandum of Law in Support of Defendants' Motion for Summary Judgment and in Opposition of Plaintiffs' Motion for Summary Judgment (ECF No. 83). No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed herein,

plaintiffs' Motion (ECF No. 68) is granted, and defendants' Amended Motion (ECF No. 72) is denied.

## I.       **BACKGROUND**

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party.  Scott v. Harris, 550 U.S. 372, 378 (2007).   When the parties have filed cross motions for summary judgment, in "considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

Plaintiffs International Painters and Allied Trades Industry Pension Fund and Tim Maitland ("plaintiffs or "the Fund") have sued defendants I. Losch Inc., Cheryl Yohn, Inc., and Hy Pressure Washing & Painting ("defendants") for unpaid withdrawal liability payments pursuant to the Employee Retirement Income Security Act ("ERISA").[1]  (ECF No. 1).  Defendant Cheryl Yohn, Inc., trading as defendant I. Losch Inc. ("the Company"), had submitted contributions to the Fund pursuant to its collective bargaining agreement since at least 1975.  (ECF No. 68-4 ¶ 5).  In July 2006, the Company ceased operations and stopped making contributions to the Fund.  (ECF No. 68 ¶ 11, 72-2 at 3).

On April 3, 2018, the Fund requested certain information from the Company regarding possible withdrawal liability as a result of the Company's cessation of contributions to the Fund in 2006, including information about defendant Hy Pressure Washing & Painting ("Hy Pressure"),

---

[1] Plaintiff Tim Maitland is the administrator of the Fund.  (ECF No. 68-4 ¶ 1).  The fund is a "'multiemployer plan,' 'employee benefit pension plan,' and a 'defined benefit plan,'" as defined by ERISA.  (Id. ¶ 2).

a business operated by Harry Yohn, the husband of Cheryl Yohn, and established as a Pennsylvania corporation in March 2006.  (ECF Nos. 68 ¶¶ 10, 16-17).  The Company did not respond to plaintiffs' request for information.  (ECF No. 68 ¶ 18).  On March 11, 2019, plaintiffs sent a letter to the Company demanding payments for withdrawal liability ("Withdrawal Liability Notice and Demand") pursuant to ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA").[2]  (ECF No. 72-2 at 4).  The Withdrawal Liability Notice and Demand indicated that the Company had a "complete withdrawal . . . during the 2006 Plan Year," and the notice set forth a payment schedule, including ten monthly payments of $11,470 and one final payment of $10,068, to begin with 60 days.  (Id.)  In addition, the Withdrawal Liability Notice and Demand identified all defendants, including Hy Pressure, as liable to the Fund.  (Id.)

On August 21, 2019, after defendants failed to request a review of the Withdrawal Liability Notice and Demand and make a payment by the May 10, 2019 deadline, the Fund sent a Notice of Default to the Company.  (ECF Nos. 68 ¶¶ 23-24, 72-2 at 4).  The Notice of Default advised defendants to cure their default within 60 days or the Fund "may require immediate payment of the outstanding amount of your withdrawal liability, plus accrued interest on the total outstanding liability with interest from the due date of the first payment which was not timely made in accordance with 29 U.S.C. § 1399(c)(5)."  (ECF No. 1-3).  Plaintiffs argue that defendants have "failed and/or refused" to make any withdrawal liability payments.  (ECF No. 68 ¶ 27).

On December 6, 2019, plaintiffs filed a Complaint in this court against defendants asserting three counts: (1) Count I – Collection of Withdrawal Liability Payments; (2) Count II – Future

---

[2] Under the MPPAA, employers who withdraw from underfunded multiemployer pension plans must pay a "withdrawal liability." Bay Area Laundry and Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc., 522 U.S. 192, 195 (1997); 29 U.S.C. §§ 1381-1461.  "An employer may discharge that obligation by making a series of periodic payments according to a postwithdrawal schedule set by the pension fund's trustees, or it may prepay the entire debt at any time." Id.

Payments Injunction; and (3) Count III – Collection on Default.  (ECF No. 1 at 4-7).  Plaintiffs seek the following damages: unpaid withdrawal liability in the amount of $124,148, interest in the amount of $13,001.02 through November 15, 2021, liquidated damages in the amount of $24,829.60, and attorney's fees and costs in the amount of $89,765.21 through November 16, 2021.[3]  (ECF No. 68-1 at 6).  Discovery closed on September 30, 2021, and thereafter, the pending Motions and related pleadings were filed.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute remains "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is properly considered "material" only if it might affect the outcome of the case under the governing law.  Id.  The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(c); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).  On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).  If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

---

[3] Plaintiff asserts that the amount of attorney's fees and costs "will increase through the remainder of this litigation and may increase further beyond that should additional efforts be necessary to ultimately collect on the Judgment amount."  (ECF No. 68 ¶ 36).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party but considers whether a fair-minded factfinder could return a verdict for the non-moving party on the evidence presented.  Anderson, 477 U.S. at 252.  In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue.  Celotex, 477 U.S. at 324.  A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment.  Anderson, 477 U.S. at 252.

Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact.  Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001) (citation omitted).  Summary judgment should be denied only where a court concludes that a reasonable factfinder could find in favor of the non-moving party.  Anderson, 477 U.S. at 252. Where, as here, the parties file cross motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard."  Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co., 627 F. Supp. 170, 171 (D. Md. 1985).

### III.   DISCUSSION

#### a.   Threshold Issues

Defendants move for summary judgment on three threshold issues.  First, defendants argue that plaintiffs' claims are time barred by the statute of limitations.  (ECF No. 72-2 at 14-16).  Second, defendants contend that plaintiffs failed to notify defendants of their withdrawal liability "as soon as practicable," as required by 29 U.S.C. § 1399(b)(1).  (Id. at 5-6, 13-14).  Third,

defendants argue that plaintiffs' claims are barred by the doctrine of laches.  (Id. at 16-17).  The court will discuss defendants' second and third arguments together as they involve related issues.

### i.  Statute of Limitations

Defendants contend that plaintiffs' claims are barred by the statute of limitations.  (Id. at 14-16).  An action for withdrawal liability payments may not be brought after the longer of either "(1) 6 years after the date on which the cause of action arose, or (2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action."  Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc., 522 U.S. 192, 198 (1997) (citing 29 U.S.C. §§ 1451(f)(1)-(2)).  The Supreme Court has clearly articulated that "the statute of limitations does not begin to run on withdrawal liability until a scheduled payment is missed."  Bay Area Laundry, 522 U.S. at 195.  "Any pension plan suit to collect the employer's withdrawal liability, commenced on the date of withdrawal, would be premature."  Id. at 202 (noting that a withdrawing employer owes nothing until the pension fund demands payment, and that no cause of action accrues until the trustees calculate the debt, set a schedule of installments, demand payment, and the employer misses a scheduled payment).  Here, defendants argue that plaintiffs' claims are barred by the statute of limitations because plaintiffs failed to bring their claims (1) "within six years from the time that the alleged withdrawal liability began to accrue, which was in 2006 when Defendants notified the Fund that it was ceasing operations," and (2) "within three years from the time that [plaintiffs] knew or should have known about the existence of the action."  (ECF No. 72-2 at 15).

On March 11, 2019, plaintiffs notified defendants of their withdrawal liability, calculated the debt owed, made a demand for payment, and provided a payment schedule.  (ECF Nos. 1-2, 68-4 ¶ 10).  The first payment was due within 60 days, on May 10, 2019, but defendants failed to

make a payment by that date, which defendants do not dispute.  (ECF No. 68-4 ¶¶ 10, 16).  The statute of limitations, therefore, began to run on May 10, 2019, when the first scheduled payment was missed.  See Bay Area Laundry, 522 U.S. at 202.  The May 10 initial payment deadline is also the date on which the cause of action arose and the earliest date on which plaintiffs acquired or should have acquired actual knowledge of the existence of such cause of action.  Given that plaintiffs filed suit in this court on December 6, 2019, there is no dispute that plaintiffs' claims are timely.  Accordingly, defendants' Amended Motion is denied on the statute of limitations issue.

### ii.   Timeliness and Laches

Next, defendants maintain that plaintiffs' claims are barred by the doctrine of laches.  (ECF No. 72-2 at 6-8, 16-18).  Specifically, defendants assert that plaintiffs' Withdrawal Liability Notice and Demand issued on March 11, 2019, was untimely because it was not made "as soon as practicable" after the Company withdrew from the Fund in July 2006.  (Id.)  Plaintiffs also move for summary judgment on this issue, arguing that defendants waived their right to contest liability because defendants failed to initiate arbitration.  (ECF Nos. 68-1 at 10-12, 73 at 4).  Under the MPPAA, the plan sponsor must notify the employer of the amount of liability and the schedule for payments, and demand payment in accordance with the schedule "[a]s soon as practicable" after the employer's withdrawal from the pension fund.  29 U.S.C. § 1399(b)(1).  "Any dispute between an employer and the plan sponsor . . . concerning a determination made under [Section 1399] . . . shall be resolved through arbitration."  29 U.S.C. § 1401(a)(1)).  "If no arbitration proceeding has been initiated . . . the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor."  Id. § 1401(b)(1).

The Fourth Circuit has held that the arbitration requirement set forth in 29 U.S.C. § 1401(a)(1) is an "exhaustion of administrative remedies" requirement, not a jurisdictional

bar.  McDonald v. Centra, Inc., 946 F.2d 1059, 1063 (4th Cir. 1991); Teamster Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 122 (4th Cir. 1991).  Nevertheless, the arbitration requirement "should be enforced except in exceptional circumstances."  Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Courtad Constr. Sys., Inc., 439 F. Supp. 2d 574, 579 (E.D. Va. 2006).  Exceptions include "those instances where (1) the dispute is a matter of statutory construction; (2) the utilization of administrative procedures would cause irreparable injury; and (3) the resort to administrative procedures would be futile."  McDonald, 946 F.2d at 1063.  The Fourth Circuit has also recognized an exception "where an employer makes a facial constitutional attack."  Courtad Constr., 439 F. Supp. 2d at 579.  The statutory construction exception, however, applies "only in cases where the employer claims that it did not *become* an employer for MPPAA purposes in time to acquire withdrawal liability, or where the employer asserts that it was *never* an MPPAA employer and thus is not subject to ERISA's dispute resolution procedures."  Teamsters Joint Council, 947 F.2d at 122 (emphasis in original) (citations omitted); see also Courtad Constr., 439 F. Supp. 2d at 579.  "[Q]uestions of statutory interpretation alone are insufficient to warrant bypassing the arbitration requirement."  Courtad Constr., 439 F. Supp. 2d at 579.

In this case, the record clearly shows that defendants received plaintiffs' Withdrawal Liability Notice and Demand sent on March 11, 2019.[4]  (ECF No. 70-11).  In that notice, plaintiffs

---

[4] While defendants do not admit or deny in their Answer whether they received the initial Withdrawal Liability Notice and Demand sent to the Company on March 11, 2019, defendants expressly admit receipt of the Notice of Default sent to the Company on August 21, 2019 (ECF No. 1 ¶¶ 13, 25 and ECF No. 14 ¶¶ 13, 25).  The Notice of Default directly referenced the March 11 demand and included a copy of it.  (ECF No. 1-3).  In addition, although the Withdrawal Liability Notice and Demand sent on March 11, 2019, and the Notice of Default sent on August 21, 2019, were addressed to the Company, Hy Pressure is deemed to have received notice of both because "notice to one member of the control group constitutes notice to all members of the group."  McDonald, 946 F.2d at 1062.  As discussed below, there is no genuine dispute of material fact that Hy Pressure is a member of the control group.

also outlined a payment schedule, with the first payment due "no later than sixty (60) days after

the date of this demand," meaning that the first payment would be due on May 10, 2019.  (Id.)  On

August 21, 2019, after the Company failed to make a payment by May 10, plaintiffs sent a Notice

of Default to the Company, affording defendants an opportunity to cure their default within 60

days.  (ECF No. 70-12).  Defendants failed to make any payments in response to the Notice of

Default or otherwise request a review of plaintiffs' withdrawal liability assessment or seek

arbitration.[5]  (ECF Nos. 68-4 ¶¶ 11-13, 72-2 at 8).

Defendants, however, do not contend that arbitration would have been futile or cause

irreparable injury.  Defendants also do not assert a facial constitutional challenge.  Instead,

defendants argue that they are "challenging the statutory interpretation of 'as soon as practicable'

under § 1399."  (ECF No. 72-2 at 17).  Such a question of statutory interpretation, however, is not

enough on its own "to warrant bypassing the arbitration requirement" set forth in Section

1401(a)(1).  Courtad Constr., 439 F. Supp. 2d at 579.  As noted above, the statutory construction

exception is limited to "cases where the employer claims that it did not *become* an employer for

MPPAA purposes in time to acquire withdrawal liability, or where the employer asserts that it was

*never* an MPPAA employer and thus is not subject to ERISA's dispute resolution

procedures."  Teamsters Joint Council, 947 F.2d at 122 (emphasis in original); see also Asbestos

Workers Local 24 Pension Fund v. NGL Insulation, Inc., 760 F. Supp. 2d 529, 538 (D. Md. 2010)

(holding that defendant was not subject to ERISA's arbitration procedures because defendant

argued that it was never an "employer" under the MPPAA).

---

[5] Defendants provide no evidence that they made any payments, requested review of plaintiffs'
Withdrawal Liability Notice and Demand, or at any time initiated arbitration.

The question of statutory interpretation raised by defendants—the meaning of "as soon as practicable" under Section 1399(b)(1)—is not related to defendants' status as an "employer" under the MPPAA and is instead an issue that should have been arbitrated.  See Bay Area Laundry, 522 U.S. at 205 ("[I]f an employer believes the trustees have failed to comply with their 'as soon as practicable' responsibility, the employer may assert that violation as a laches objection *at an arbitration* contesting the withdrawal liability assessment.") (emphasis added).  Defendants, therefore, do not fall within any of the narrow exceptions to the arbitration requirement.  As a result of their failure to initiate arbitration, defendants have waived their right to contest the timeliness of plaintiffs' Withdrawal Liability Notice and Demand sent on March 11, 2019.  Cf. Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. BES Servs., Inc., 469 F.3d 369, 375-76 (4th Cir. 2006) (holding that defendant waived its right to contest the plan sponsor's calculations of withdrawal liability because that issue "concern[s]" a "determination of withdrawal liability" and, therefore, should have been arbitrated) (internal quotation marks omitted).  Accordingly, defendants' Amended Motion is denied on the issues of timeliness and laches, and plaintiffs' Motion is granted on the issue of waiver.[6]

---

[6] While defendants have waived their right to contest liability based on the timing of their Withdrawal Liability Notice and Demand, defendant Hy Pressure has not waived its right to contest liability on the grounds that it was not under common control with the Company for purposes of withdrawal liability.  The question of whether Hy Pressure was under common control with the Company clearly bears on Hy Pressure's status as an employer under the MPPAA.  See 29 U.S.C. § 1301(b) (noting that all trades and businesses which are under common control are treated as a single employer for purposes of withdrawal liability).  Because this issue of employer eligibility falls within the statutory construction exception to the arbitration requirement, as discussed above, the court has authority to decide whether Hy Pressure was under common control with the Company and, therefore, subject to withdrawal liability.  See Asbestos Workers, 760 F. Supp. 2d at 538 (holding that the defendant did not forfeit its right to contest withdrawal liability by failing to initiate arbitration because the defendant argued that it was never an "employer" under the MPPAA, so the withdrawal liability payments did not become "due and owing" when the deadline for arbitration passed).

10

b. **Withdrawal Liability of the Company**

Plaintiffs move for summary judgment, arguing that defendants are liable for unpaid withdrawal payments, interest on those payments, liquidated damages, and attorney's fees and costs. (ECF No. 68-1 at 13-16). If, after notice of withdrawal liability is issued and a demand for payment is made, the withdrawing party fails to initiate arbitration pursuant to 29 U.S.C. § 1401(a), "the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1).

As discussed above, defendants waived their right to contest the timeliness of plaintiffs' Withdrawal Liability Notice and Demand sent to the Company on March 11, 2019. It is also undisputed that defendants failed to initiate arbitration following plaintiffs' Withdrawal Liability Notice and Demand as well as plaintiffs' Notice of Default sent to the Company on August 21, 2019. (ECF Nos. 68-4 ¶¶ 11-13, 72-2 at 8). Consequently, the "amounts demanded by [plaintiffs] under [29 U.S.C. § 1399(b)(1)] . . . shall be due and owing on the schedule set forth by [plaintiffs]." 29 U.S.C. § 1401(b)(1), § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."). In addition, plaintiffs are entitled to interest on the amount of unpaid withdrawal liability, liquidated damages, and attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(2).[7] See Asbestos, 760 F. Supp. 2d at 535, 542-43.

---

[7] 29 U.S.C. § 1132(g)(2) provides: "In any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan: (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of (i) interest on the unpaid contributions or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A), [and] (D) reasonable attorney's fees and costs."

11

Here, plaintiffs seek $124,148 in unpaid withdrawal liability, $13,001.02 in interest on the unpaid withdrawal liability from the day of the first missed payment, May 10, 2019, through November 15, 2021 (i.e., this figure represents the rate agreed upon in the parties' collective bargaining agreement and is the governmental rate used to calculate underpayment of federal taxes), and $24,829.60 in liquidated damages (i.e., this figure represents 20 percent of the amount of unpaid withdrawal liability). (ECF No. 68-1 at 16). Plaintiffs provide sufficient evidence to support the amounts requested, including the declaration of plaintiff Tim Maitland and calculations showing the amount of interest owed. (See ECF Nos. 68-4 ¶¶ 15-17, 68-12). Notably, while defendants dispute that they are liable for any damages, they do not dispute the *amount* of damages asserted by plaintiffs. Based on the above, there is no genuine dispute of material fact that the Company (i.e., defendant Cheryl Yohn, Inc. trading as defendant I. Losch Inc.) is liable for $124,148 in unpaid withdrawal liability, interest on that amount of unpaid withdrawal liability, and $24,829.60 in liquidated damages. Accordingly, plaintiffs' Motion is granted, and defendants' Amended Motion is denied.

### c. Withdrawal Liability of Defendant Hy Pressure

Next, plaintiffs and defendants move for summary judgment on the issue of Hy Pressure's withdrawal liability. Specifically, plaintiffs argue that Hy Pressure was under common control with the Company at the time of the Company's withdrawal in July 2006 and, therefore, is jointly and severally liable for the unpaid withdrawal payments, interest, and liquidated damages. (ECF No. 68-1 at 16-19). Defendants contend that Hy Pressure was not under common control with the Company and, therefore, is not liable for any of the damages sought by plaintiffs. (ECF Nos. 72-2 at 9-12, 83 at 2-8).

Under the MPPAA, all "trades or businesses" under "common control" at the time of withdrawal are treated as a single employer for purposes of withdrawal liability.  Asbestos Workers, 760 F. Supp. 2d at 534-35 (citing 29 U.S.C. § 1301(b)(1)).  Each member of the "control group" is jointly and severally liable for the withdrawal of any other member.  See id. at 538.  One type of "single employer" is known as a brother-sister controlled group.  26 C.F.R. § 1.414(c)-2(c)(1).  When both entities are corporations, a brother-sister controlled group exists when five or fewer individuals together own a "controlling interest" in each corporation, and the same five or fewer individuals also have "effective control" of both corporations.  United Food and Com. Workers Unions and Participating Emps. Pension Fund, v. Magruder Holdings, Inc., et al., No. GJH-16-2903, 2019 WL 1409725, at *3 (D. Md. Mar. 27, 2019) (citing 26 C.F.R. § 1.414(c)-2(b)(2), § 1.414(c)-2(c)(1)); see Asbestos Workers, 760 F. Supp. 2d at 540.  For corporations, a "controlling interest" means 80% or more ownership interest in each corporation.  United Food, 2019 WL 1409725, at *3.  In addition, "effective control" of a corporation "means the same five or fewer individuals own more than 50% of the interest in each corporation "to the extent such ownership is identical with respect to each such organization."  United Food, 2019 WL 1409725, at *3 (citing 26 C.F.R. § 1.414(c)-2(c)(1)(ii)).

Further, an individual's ownership interest in a corporation can be attributed to their spouse ("the spousal attribution rule").  Id. at *4 (citing 26 C.F.R. § 1.414(c)-4(b)(5)).  An exception to the spousal attribution rule, however, applies if each of the following conditions are satisfied: (1) the individual does not, at any time during the taxable year, own directly any interest in the organization, (2) the individual is not a member of the board of directors, a fiduciary, or an employee of the organization and does not participate in the management of the organization at any time during the taxable year, (3) not more than 50 percent of the organization's gross income

for the taxable year was derived from royalties, rents, dividends, interest, and annuities, and (4) interest in the organization is not, at any time during such taxable year, subject to conditions which substantially restrict or limit the spouse's right to dispose of such interest and which run in favor of the individual or the individual's children who have not attained the age of 21 years.[8]  26 C.F.R. § 1.414(c)-4(b)(5)(ii).

Here, it is undisputed that both the Company and Hy Pressure were corporations at the time of the Company's withdrawal.  (ECF Nos. 82 at 4, 83 at 6-7).  It is also undisputed that the Company and Hy Pressure were "trades or businesses" under 29 U.S.C. § 1301(b)(1).  As to common control, plaintiffs assert that Hy Pressure was under common control with the Company as a brother-sister controlled group based on the spousal attribution rule.  (ECF Nos. 68-1 at 16-19, 82 at 4-5).  Specifically, plaintiffs provide sufficient evidence that Cheryl Yohn ("Mrs. Yohn") owned 80% or more of the Company at the time of the Company's withdrawal in 2006, and her husband, Harry Yohn ("Mr. Yohn"), owned 80% or more of Hy Pressure at the time of the Company's withdrawal.  (ECF Nos. 1 ¶¶ 9-10, 14 ¶¶ 9-10, 82-1 ¶¶ 9, 12).[9]  In accordance with the

---

[8] The parties dispute the applicable standard for the spousal attribution exception.  Plaintiffs argue that the relevant exception is governed by 26 C.F.R. § 1.414(c)-4(b)(5) whereas defendants contend that either 26 C.F.R. § 1.414(c)-4(b)(5) or 26 U.S.C. § 1563(e)(5) may apply.  (ECF Nos. 82 at 6, 83 at 8-9).  While defendants note the substantive similarities between 26 C.F.R. § 1.414(c)-4(b)(5) and 26 U.S.C. § 1563(e)(5), the MPPAA and related case law in this circuit make clear that 26 C.F.R. § 1.414(c)-4(b)(5) is the relevant standard for the exception in this context.  See Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Despenas Mech., Inc., No. 1:11cv1205 (TSE/TRJ), 2012 WL 1894667, at *2 (E.D. Va. May 4, 2012) ("26 C.F.R. § 1.414(c)-4(b)(5)(i), which controls pursuant to 29 U.S.C. § 1301(b)(1), provides that an individual is considered to own an interest owned by his or her spouse."); 29 U.S.C. § 1301(b)(1) (definition of "common control" must "be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c) of Title 26").

[9] The court deems the evidence provided by plaintiffs as to the Yohns' ownership interests in their respective businesses adequate.  Notably, defendants have not challenged the authentication of the screenshot image provided by plaintiffs in paragraph 9 of Brian Pepicelli's declaration (ECF No. 82-1 ¶ 9), nor have defendants disputed plaintiffs' assertions as to the Yohns' ownership interests or provided any conflicting evidence.

spousal attribution rule, Mrs. Yohn's interest in the Company is attributed to Mr. Yohn, and Mr. Yohn's interest in Hy Pressure is attributed to Mrs. Yohn, thus satisfying the "controlling interest" and "effective control" requirements of a brother-sister controlled group as set forth in 26 C.F.R. § 1.414(c)-2(b)(2), § 1.414(c)-2(c)(2).  Accordingly, there is no genuine dispute that Hy Pressure was under common control with the Company as a brother-sister controlled group at the time of the Company's withdrawal in 2006.

Defendants, however, assert that the spousal attribution exception applies such that Hy Pressure was not under common control with the Company.[10]  (ECF Nos. 72-2 at 9-12, 76 at 2-4). Specifically, defendants offer the sworn affidavits of Mr. and Mrs. Yohn to support their argument. (ECF No. 83 at 3).  The affidavits, however, fail to show that either Mr. Yohn or Mrs. Yohn satisfy all four elements of the spousal attribution exception.[11]

---

[10] The burden is on defendants to prove the application of the spousal attribution exception.  Cf. Johnson v. City of Columbia, 949 F.2d 127, 130 (4th Cir. 1991) ("Since [defendant] seeks to come within the meal time and sleep time [regulatory] exceptions [to the Fair Labor Standards Act], the burden is on [defendant] to show that it is entitled to the benefits of those exceptions."); Koster v. Frederick Cnty. Bd. of Educ., 921 F. Supp. 1453, 1455 (D. Md. 1996) ("The burden of proving an exception to the exhaustion requirement rests on the party asserting the exception.").

[11] While plaintiffs assert that defendants have the burden of showing that the exception applies to both spouses (ECF No. 82 at 7), defendants maintain that the court should focus on the extent of Mr. Yohn's involvement in the Company, but that the result is the same even if the court focused on Mrs. Yohn's involvement in Hy Pressure (ECF No. 83 at 8).  Neither plaintiffs nor defendants, however, cite any authority to support their arguments as to whether the court's analysis of the spousal attribution exception should focus on one or both spouses.  Nevertheless, the plain language of the spousal attribution exception contains no limitations on who may serve as the common controller [and] . . . [i]t makes sense that the spousal attribution exception analysis be applied to either spouse."  Groden v. Reichert & Son Trucking, Inc., No. 16-10378-MLW, 2018 WL 1326389, at *8-9 (D. Mass. Mar. 15, 2018) (noting that the purpose of the spousal attribution regulation is to prevent spouses from shifting marital property between themselves to defeat controlled group liability); see also Hancock v. Koz Trucking & Sons, Inc., No. 13CV790, 2015 WL 996821, at *3 (N.D. Ill. Mar. 3, 2015) (finding no support for defendants' argument that the analysis of the spousal attribution exception must focus on one spouse versus another).  Based on the above, it is clear that the involvement of either spouse in the other spouse's business may defeat the application of the spousal attribution exception.

First, as to Mr. Yohn's involvement in the Company, defendants offer evidence that Mr. Yohn satisfied the first, third, and fourth elements of the spousal attribution exception. Regarding the first element, Mr. Yohn's affidavit notes that he "did not at any time own directly any stock in the Company" (ECF No. 83-1 ¶ 20).[12]  26 C.F.R. 1.414(c)-4(b)(5)(ii)(A).  Defendants also provide evidence, through Mrs. Yohn's affidavit, that Mr. Yohn satisfies the third and fourth elements of the spousal attribution exception, which requires that "[n]ot more than 50 percent of the Company's gross income for such taxable year was derived from royalties, rents, dividends, interest, and annuities" and "[s]uch interest in [the Company] is not, at any time during such taxable year, subject to conditions which substantially restrict or limit the spouse's right to dispose of such interest and which run in favor of the individual or the individual's children who have not attained the age of 21 years."  § 1.414(c)-4(b)(5)(ii)(C)-(D); (ECF No. 83-2 ¶¶ 30-31).  Though Mrs. Yohn's affidavit notes that Mr. Yohn was not a director or employee of the Company and did not participate in the management of the Company  (ECF No. 83-2 ¶¶ 28-29), defendants provide no evidence showing that Mr. Yohn was not a fiduciary of the Company.  Defendants, therefore, fail to satisfy the second element of the spousal attribution exception, which requires a showing that Mr. Yohn "is not a member of the board of directors, *a fiduciary*, or an employee" of the Company.  § 1.414(c)-4(b)(5)(ii)(B) (emphasis added).

As to Mrs. Yohn's involvement in Hy Pressure, defendants offer evidence that Mrs. Yohn satisfied the first element of the spousal attribution exception.  Mr. Yohn's affidavit notes that Mrs. Yohn "never owned any interest in Hy Pressure," thus satisfying the first element of the spousal attribution exception.  § 1.414(c)-4(b)(5)(ii)(A); (ECF No. 83-1 ¶ 8).  Defendants,

---

[12] As defendants note, "interest" in the context of the spousal attribution exception means "stock," in the case of a corporation.  26 C.F.R. § 1.414(c)-4(a).

however, fail to offer any evidence to establish that Mrs. Yohn satisfies the second, third, or fourth elements of the exception. The affidavits of Mr. and Mrs. Yohn state nothing about Mrs. Yohn's involvement with Hy Pressure, but instead note that "the <u>Company</u> was not involved with the business, operations, or management of Hy Pressure." (ECF Nos. 83-1 ¶ 17, 83-2 ¶ 21) (emphasis added). The spousal attribution exception applies to individuals, not companies. <u>See</u> §§ 1.414(c)-4(b)(5)(i) ("[A]n <u>individual</u> shall be considered to own an interest owned, directly or indirectly, by or for his or her spouse") (emphasis added); 1.414(c)-4(b)(5)(ii) ("An <u>individual</u> shall not be considered to own an interest in an organization owned, directly or directly, by or for his or her spouse" if all four elements of the spousal attribution exception are met) (emphasis added). Accordingly, the elements of the spousal attribution exception require that: (1) "Such <u>individual</u> does not, at any time during such taxable year, own directly any interest in such organization" and, (2) "Such <u>individual</u> is not a member of the board of directors, a fiduciary, or an employee of such organization and does not participate in the management of such organization at any time during such taxable year." § 1.414(c)-4(b)(5)(ii)(A)-(B) (emphasis added). The first two elements of the exception, must be satisfied with regard to the <u>individual</u>, not the <u>company</u> owned or managed by the individual, seeking the application of the spousal attribution exception. Whether the Company is involved in the business or management of Hy Pressure is irrelevant to whether Mrs. Yohn fits within the spousal attribution exception.

The affidavits offered by defendants are notable in that they fail to address Mrs. Yohn's <u>individual</u> involvement, as compared to her "Company's" involvement with Hy Pressure. Mrs. Yohn's affidavit includes multiple references to "the Company," rather than herself, including that "[t]he Company has never been involved in the hiring, promotion, or <u>termination</u> of an employee who worked for HY Pressure." (ECF No. 83-2 ¶ 21). To satisfy the elements of the

spousal attribution exception, Mrs. Yohn must demonstrate that she, <u>individually</u>, has not been involved in the management of Hy Pressure.  Mrs. Yohn also states that "[t]he Company has never discussed wages, benefits, or employees' conditions of employment with Harry Yohn and Hy Pressure (ECF No. 83-2 ¶ 23).  Again, the Company's lack of involvement in Hy Pressure cannot satisfy the requirement that Mrs. Yohn, the <u>individual</u>, be uninvolved in the management of Hy Pressure.  Mr. Yohn's affidavit similarly references the "Company" instead of Mrs. Yohn.  For example, Mr. Yohn's affidavit states that "[t]he Company was not involved with the business, operations, or management of the [sic] HY Pressure."  (ECF No. 83-1 ¶ 17).

Further, the affidavits fail to establish the third or fourth elements of the spousal attribution exception.  Unlike the first and second elements, which require that the <u>individual</u> seeking the exception meet certain requirements, (<u>i.e.</u>, not owning any stock in the organization and not being a board member, fiduciary, or managing employee), the third and fourth elements relate to the company owned by the individual's spouse.  Here, the relevant organization is not Mrs. Yohn's Company, but Mr. Yohn's, Hy Pressure.  Defendants' affidavits contain no statements regarding whether "more than 50 percent of [Hy Pressure's] gross income for such taxable year was derived from royalties, rents, dividends, interest, and annuities."  § 1.414(c)-4(b)(5)(ii)(C).  Nor do they provide whether any "interest in [Hy Pressure] is . . . subject to conditions which substantially restrict or limit the [Mr. Yohn's] right to dispose of such interest and which run in favor of the [Mrs. Yohn] or the [Mrs.Yohn's] children who have not attained the age of 21 years." § 1.414(c)-4(b)(5)(ii)(D).  Defendants, therefore, failed to offer any evidence that elements three or four of the spousal attribution exception have been met.

In sum, defendants have failed to establish the required elements of the spousal attribution exception.  Accordingly, as noted above, the spousal attribution rule applies, and the court

concludes that there is no genuine dispute of material fact as to whether Hy Pressure was under common control with the Company as a brother-sister controlled group at the time of the Company's withdrawal in 2006. Hy Pressure, therefore, is jointly and severally liable for $124,148 in unpaid withdrawal liability, $13,001.02 in interest through November 15, 2021 and additional interest to be calculated at the same rate from November 15, 2021 through the date of judgment, and 20% of the amount of the unpaid withdrawal liability in liquidated damages, or $24,829.60.[13] (ECF No. 68-4 ¶¶ 15-17). Accordingly, plaintiffs' Motion is granted, and defendants' Amended Motion is denied.

**d. Attorney's Fees**

ERISA "mandates an award of reasonable attorneys' fees when, as here, a fund prevails in an action for unpaid contributions pursuant to 29 U.S.C. § 1145." Int'l Painters and Allied Trades Indus. Pension Fund v. Madison Coatings Co., Inc., No. SAG-17-1559, 2019 WL 5625759, at *5 (D. Md. Oct. 31, 2019). To calculate the appropriate award of attorney's fees, the court "must first determine the lodestar amount" defined as a "reasonable hourly rate multiplied by hours reasonably expended." Id. (quoting Grissom v. The Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008)). This court uses the factors adopted in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978) in evaluating both the lodestar calculations and the overall reasonableness of the fee. See Int'l Painters and Allied Indus. Pension Fund, 2019 WL 5625759, at *5. "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990) (internal quotations omitted).

---

[13] Defendants do not challenge the amount of the unpaid withdrawal liability, interest, and liquidated damages put forth by plaintiffs.

Plaintiffs seek $89,765.21 in attorney's fees and costs (ECF No. 68-1 at 16), supported by a declaration of counsel (ECF No. 68-8) and a detailed time and expense record (ECF No. 68-14). Plaintiffs' records, however, only reflect fees and costs through November 16, 2021, the day before plaintiff's Motion was filed. (ECF No. 68-1 at 16).  Additionally, as plaintiffs have retained new counsel, none of the fees and costs incurred by plaintiffs' current counsel are before the court. Further, defendants have not addressed the amount and reasonableness of the fees sought by plaintiffs.  As a result, the court is not in a position to render a decision as to the amount of reasonable attorney's fees to which plaintiffs are entitled.  A separate order will follow, setting forth a briefing schedule to allow plaintiffs the opportunity to provide the court with updated fee calculations, with adequate support to show the reasonableness of any recently incurred fees or costs, and to allow defendants the opportunity to present any response to plaintiffs' fee request.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion (ECF No. 68) is GRANTED, and defendants' Amended Motion (ECF No. 72) is DENIED.  Plaintiffs are awarded the following damages: $124,148 in unpaid withdrawal liability, $13,001.02 in interest through November 15, 2021 and additional interest to be calculated at the same rate from November 15, 2021 through the date of judgment, and $24,829.60 in liquidated damages.  A separate order will be issued.


Date: September 22, 2022

/s/
_____
Beth P. Gesner
Chief United States Magistrate Judge